William **KEEVER** and Lawrence J. Friedman, Appellants,

v.

Richard **FINLAN** and Don Venable, Appellees.

No. 05–96–01411–CV.

Court of Appeals of Texas, Dallas.

Feb. 18, 1999.

Rehearing Overruled April 6, 1999.

P. Michael Jung, Strasburger & Price, L.L.P., Dallas, Alan B. Rich, Baron & Budd, Dallas, Robert S. Driegert, Friedman & Associates, P.C., Dallas, Lawrence J. Friedman, Friedman, Driegert & Hsueh, L.L.C., Dallas, for appellants.

Ronald D. Hinds, Dallas, for appellees.

Before Justices LAGARDE, OVARD, and ROACH.

## OPINION ON REHEARING

JOHN R. ROACH, Justice.

We grant appellants' motions for rehearing. The Court's opinion of October 5, 1998 is withdrawn. The judgment of October 5, 1998 is vacated. The following is now the opinion of the Court.

Richard Finlan and Don Venable sued William Keever under the Texas Open Records Act (TORA) to compel the former Dallas school board trustee to file campaign finance reports. The trial court ultimately dismissed with prejudice Finlan and Venable's claims against Keever and dismissed Keever's claim for attorney's fees. After signing the judgment, the trial court assessed sanctions against Keever's attorney, Lawrence J. Friedman.

On appeal, Keever challenges the trial court's order dismissing with prejudice his claim for attorney's fees, and Friedman appeals the trial court's sanctions order against him. In a cross-appeal, Finlan challenges

the trial court's order granting Keever's motion for summary judgment and denying his.[1]

For the reasons set forth below, we reform the trial court's judgment to award Keever his court costs and affirm the judgment as reformed. Additionally, we affirm the trial court's sanctions order.

## FACTUAL BACKGROUND

Venable and Finlan sent Keever a letter demanding that he "perform his ministerial duty" and file past-due campaign finance reports and amend "as necessary" the reports on file. They also requested in their letter, pursuant to the TORA, to "have access to inspect and copy any and all documents in your actual or constructive possession" maintained by Keever under section 254.001(a) of the Texas Election Code. Presumably, this request included Keever's supporting documents for his campaign finance reports that he maintained as an officeholder. At the time, Keever was a member of the Board of Trustees of the Dallas Independent School District (DISD).

When Keever allegedly failed to comply with the requests, Venable and Finlan sued and sought a writ of mandamus under the TORA to compel Keever to "immediately file corrected and/or past due finance reports." Both parties filed motions for summary judgment. The trial judge granted Keever's motion, dismissed with prejudice Finlan's claims, and set for trial Keever's claim for attorney's fees.

The attorney's fee hearing took place on April 10–11, 1996. After Keever presented his evidence, Finlan and Venable filed a motion for judgment on the basis that (i) the fees were paid by DISD and there was no evidence that Keever employed an attorney and (ii) Keever had no standing to recover attorney's fees for DISD. The trial judge granted Finlan's motion for judgment and ordered that Keever's claim for attorney's fees be dismissed with prejudice.

Subsequently, Finlan and Venable filed separate motions for sanctions alleging Keev-

er's attorney, Friedman, filed a false affidavit on attorney's fees in connection with Keever's motion for summary judgment. The trial court held a hearing on the motion. On June 11, 1996, the trial judge signed an order in which he found that Friedman made false statements in an affidavit and ordered him to pay Finlan and Venable $18,000 as a sanction for his conduct. Friedman filed a motion to reconsider. Although the trial judge held a hearing on the motion, he did not sign an order on the motion.

Keever, Friedman, and Finlan appealed. We will address each complaint, beginning with the ruling on Keever's motion for summary judgment.

## SUMMARY JUDGMENT

In four cross-points of error, Finlan challenges the trial court's decision to deny his motion for summary judgment and grant Keever's. In his first two cross-points, Finlan contends that he was entitled to summary judgment because (1) Keever did not file a verified answer prior to trial and (2) the requested records are "clearly public information." In his third and fourth cross-points, he complains the trial court erred in granting Keever's motion because the motion only attacked Finlan's suit by special exceptions and summary judgment is improper on such a basis.

The standard for reviewing a summary judgment is well-established. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). To prevail on summary judgment, a plaintiff must conclusively establish all elements of his cause of action as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972); TEX.R. CIV. P. 166a(c). On the other hand, the defendant, as movant, must either (1) disprove at least one element of the plaintiff's theories of recoveries or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A matter is conclusively established if

---

1. Although Venable was a plaintiff in the lawsuit below, he did not file a brief in this Court nor did he file any cross-points of error regarding the

denial of his motion for summary judgment and the granting of Keever's.

ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982).

When, as in this case, both parties file motions for summary judgment and one is granted and one is denied, we review all questions presented. *Nationwide Property & Cas. Ins. Co. v. McFarland*, 887 S.W.2d 487, 490 (Tex.App.—Dallas 1994, writ denied). The reviewing court should render such judgment as the trial court should have rendered. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). We review the summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Howard v. INA County Mut. Ins. Co.*, 933 S.W.2d 212, 216 (Tex.App.—Dallas 1996, writ denied).

In his first cross-point of error, Finlan asserts that, in a mandamus proceeding, all factual allegations contained in the petition are accepted as true if no sworn denial is filed. Finlan contends that Keever did not have a verified answer on file at the time of the summary judgment order and he was therefore entitled to summary judgment based solely upon the allegations in his petition for mandamus. We cannot agree.

Assuming Finlan's statement of the law is correct, he did not raise this ground in his motion for summary judgment. Because he failed to raise this ground in his motion for summary judgment before the trial court, he cannot now challenge the trial court's denial of his summary judgment on this basis. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 n. 2 (Tex.1993) (motion for summary judgment must specifically state grounds upon which judgment is sought). We overrule the first cross-point of error.

In his second cross-point of error, Finlan contends he was entitled to summary judgment because the "records at issue are clearly public information." Specifically, in his motion for summary judgment, Finlan sought to inspect Keever's "canceled checks,

receipts for payment, deposit slips of income, etc, [sic] for Keever's campaign activities." However, whether the records are public information is not an issue we need to decide. The dispositive inquiry is whether Finlan was entitled to a writ of mandamus against *Keever* under the TORA. We conclude he was not.

The TORA provides:

A requestor or the attorney general may file suit for a writ of mandamus *compelling a governmental body* to make information available for public inspection if the governmental body refuses to request an attorney general's decision as provided by Subchapter G or refuses to supply public information or information that the attorney general has determined is public information.

TEX. GOV'T CODE ANN. § 552.321 (Vernon Supp.1999) (emphasis added).

The definition of "governmental body" includes "a school district board of trustees." TEX. GOV'T CODE ANN. § 552.003(1)(A)(v) (Vernon Supp.1999). Keever is not a "school district board of trustees"; he is one member of that body. Therefore, Keever is not a "governmental body" and not subject to the act. Accordingly, Finlan was not entitled to seek a mandamus against Keever to compel him to make information available for his inspection under the TORA.

Furthermore, contrary to Finlan's allegations, Keever is not the custodian of records for DISD. Under the TORA, the chief administrative officer for DISD is its officer for public information. *See* TEX. GOV'T CODE ANN. § 552.201(a) (Vernon Supp.1999). According to Keever's summary judgment evidence, DISD's chief administrative officer is its superintendent. Thus, DISD's superintendent had the duty to make public information available for public inspection and copying, subject to the penalties provided in the TORA. *See* TEX. GOV'T CODE ANN. § 552.203(1) (Vernon Supp.1999). Keever was not DISD's superintendent; therefore, he had no duty to produce the information for inspection or copying.[2] We overrule the second cross-point of error.

2. Finlan's fourth amended petition sought a common law writ of mandamus against Keever and

Finally, in his third and fourth cross-points of error, Finlan complains that the trial court improperly granted summary judgment in Keever's favor. Specifically, he contends that Keever's amended motion is based on "a series of special exceptions," such as (1) Keever is not a "governmental body," (2) Finlan has sued Keever in the wrong capacity, and (3) Finlan lacks standing to compel Keever to file his past due campaign reports. He argues Keever's claim that Finlan failed to state "a viable cause of action" was an improper basis for summary judgment because a defendant may not obtain summary judgment based on defects in pleadings.

■■■ Generally, it is improper to grant summary judgment on a deficient pleading's failure to state a cause of action when the deficiency can be attacked through special exceptions. *Hendricks v. Thornton*, 973 S.W.2d 348, 369 (Tex.App.—Beaumont 1998, n.w.h.). What Finlan ignores, however, is that the trial court construed a prior motion for summary judgment filed by Keever to be special exceptions, sustained the special exceptions, and ordered Finlan to replead. Thus, Finlan had a fair opportunity to correct any deficiencies in his pleading. Finlan subsequently filed his third amended petition, and Keever moved for summary judgment on substantially the same grounds as before. The trial judge granted Keever's motion and dismissed Finlan's claims with prejudice. We have previously concluded that Keever is not a "governmental body," which was one of the grounds listed in Keever's motion. Thus, the trial court did not err in granting the summary judgment on this basis, in light of the fact that Finlan had the opportunity to amend his pleading to meet the exception, if he could. *See Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex.1998) (if party is given an opportunity to amend his pleading, and the amended pleading fails to state a cause of action or if the pleading deficiency is of a type that cannot be cured

by amendment, summary judgment may be granted). We overrule cross-points of error three and four.

### ATTORNEY'S FEES/COSTS

In ten points of error, Keever generally complains the trial court erred in not awarding him attorney's fees and court costs and in not filing findings of fact and conclusions of law with respect to its decision. Specifically, he contends that because he prevailed on summary judgment, he was entitled to statutory attorney's fees and court costs. For the reasons set forth below, we conclude the trial court did not abuse its discretion with respect to attorney's fees but did abuse its discretion in taxing costs against Keever.

As a threshold matter, we will first consider point of error "D," in which Keever seeks reversal because the trial judge did not file findings of fact and conclusions of law. Keever contends the trial court's failure to file such findings, upon a timely request, was an abuse of discretion. We disagree.

■■■ Section 552.323 of the TORA does not *require* an award of attorney's fees. *See* TEX. GOV'T CODE ANN. § 552.323(a) (Vernon 1994) (stating court *may* assess costs of litigation and reasonable attorney fees *incurred* by a plaintiff or defendant who substantially prevails). Rather, it makes the award of attorney's fees discretionary with the trial court. *See McNamara v. Fulks*, 855 S.W.2d 782, 784 (Tex.App.—El Paso 1993, no writ); *cf. Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998) (statutes that provide court "may" award attorney fees afford trial court measure of discretion in deciding whether to award attorney fees or not). Under a discretionary statute, findings of fact and conclusions of law are neither appropriate nor required. *See J.R.W. v. State*, 879 S.W.2d 254, 257 (Tex.App.—Dallas 1994, no writ); *Crouch v. Tenneco, Inc.*, 853 S.W.2d 643, 649

---

alleged he had a ministerial and statutory duty to produce the records pursuant to section 1.012 of the Texas Election Code. This petition was filed *after* the trial court held the summary judgment hearing. Keever filed a motion to strike the petition on the basis that it was filed without leave of court. The trial judge subsequently granted Keever's motion and struck the petition.

The amended pleading was untimely; consequently, we do not consider this petition in our analysis. *See Continental Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 276 (Tex.1996) (amended petition filed five days before summary judgment hearing was untimely unless filed with leave of court).

(Tex.App.—Waco 1993, writ denied). Because Keever sought attorney's fees under a discretionary statute, the trial court was not required to file findings of fact and conclusions of law with respect to the dismissal of Keever's claim. Accordingly, we overrule point of error "D."

In eight points of error, Keever challenges the trial court's judgment on the basis of the evidence presented at the attorney's fee hearing. He generally contends that (1) he established his entitlement to attorney's fees as a matter of law and (2) the judgment is against the great weight and preponderance of the evidence.

Keever presented two witnesses at the hearing: his trial counsel, Alan Rich, and his expert on attorney's fees, E. Russell Nunnally. Rich testified he and other attorneys with Friedman & Associates, P.C. represented Keever in this case. Rich testified about the services rendered on Keever's behalf and said $49,000 in legal fees were incurred prior to October 20, 1995, the date that the trial court granted summary judgment in Keever's favor. Rich testified that another $25,000 in fees were incurred after October 20th. On cross-examination, Rich acknowledged that the attorney fee bills in this case were not sent to Keever but were sent to DISD.

Rich testified that his firm was hired by DISD board resolution and "either the DISD or Mr. Keever is obligated to pay us for that representation." He testified that his firm does not have a "written agreement" with Keever to represent him and was unsure as to whether an oral contract existed. He stated that he thought "if DISD doesn't pay Mr. Keever would be obligated."[3]

Nunnally, a Dallas lawyer, testified as an expert witness on attorney's fees. He said, based on his review of the file, that $75,000 was a reasonable fee to be charged in this case.

After Keever presented his witnesses and rested his case, Finlan and Venable filed a motion for judgment. In the motion, both argued that (1) there was no evidence that Keever employed an attorney and (2) Keever had no standing to recover DISD's attorney's fees. In particular, both asserted that because any agreement on attorney's fees was between DISD and Friedman & Associates and because DISD, and not Keever, had paid the bills, Keever was not entitled to recover attorney's fees. Finlan and Venable presented the motion to the trial judge, who apparently agreed, saying: "I have heard no testimony that would indicate Mr. Keever has

3. Specifically, Rich testified as follows during questioning by Finlan:

[FINLAN]: Is it your testimony, Mr. Rich, that it is your belief that you are obligated to defend Mr. Keever through some arrangement that you have made with DISD?
[FRIEDMAN]: Objection, Your Honor, asked and answered.
[TRIAL COURT]: Overrule.
[FRIEDMAN]: Further objection, it's irrelevant.
[TRIAL COURT]: Overrule.
[RICH]: It is my understanding that we are obligated to defend Mr. Keever in this case, and that either the DISD or Mr. Keever is obligated to pay us for doing that work.
* * * *
[FINLAN]: Do you know how you acquired the obligation to defend Mr. Keever?
[RICH]: We were hired. And I think that imposes an obligation upon us. We were asked to make an appearance and to defend the case.
[FINLAN]: Who hired you?
[RICH]: I believe we were hired by the DISD.
[FINLAN]: Who at DISD hired you?
[RICH]: I don't know if it was any individual. I believe that DISD as an entity hired us to defend Mr. Keever.

[FINLAN]: Did DISD pass a resolution authorizing DISD as a governmental unit to hire Friedman and Associates?
[RICH]: I believe that they did.
* * * *
[FINLAN]: Do you have any oral or written agreement with Mr. Keever himself to provide legal representation?
MR. FRIEDMAN: Same objection, Your Honor.
[TRIAL COURT]: Overrule. You can answer that.
[RICH]: Well, we don't have a written agreement with Mr. Keever. But on more than one occasion we have spoken to Mr. Keever, and in the course of those conversations we have discussed our representation of him. And whether those conversations constitute an oral contract, I don't have an opinion on as I sit here. And, of course, I'm not testifying as an expert right now.
[FINLAN]: Is Mr. Keever obligated to pay attorneys' fees to Friedman and Associates?
[RICH]: I think that if DISD doesn't pay Mr. Keever would be obligated, yes.

incurred any attorneys' fees." In the judgment, the judge dismissed Keever's claims for attorney's fees with prejudice. Keever contends the ruling was error. We disagree.

As stated previously, the TORA provides that a trial court "may assess costs of litigation and reasonable attorney's fees incurred by" the substantially prevailing party. *See* TEX. GOV'T CODE ANN. § 552.323(a) (Vernon 1994). We do not reverse the trial court's denial of attorney's fees unless the complaining party shows a clear abuse of discretion. *See Agan,* 940 S.W.2d at 81. It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles or to rule without supporting evidence. *Bocquet,* 972 S.W.2d at 21.

In this case, it is undisputed that Keever prevailed on summary judgment. The dispositive issue is whether he in fact *incurred* attorney's fees, as required by the statute. We resolve this issue by considering the meaning of "incurred." Case law has defined "incur" to mean "become liable to pay." *Beasley v. Peters,* 870 S.W.2d 191, 196 (Tex. App.—Amarillo 1994, no writ). Similarly, Black's Law Dictionary defines incur as "[t]o have liabilities cast upon one by act or operations of law, as distinguished from contract, where the party acts affirmatively. To become liable or subject to, to bring down upon oneself, as to incur debt, danger, displeasure and penalty, and to become through one's own action liable or subject to." BLACK'S LAW DICTIONARY 768 (6th ed.1990).

Having considered the plain meaning of "incurred" and the evidence presented at the hearing regarding Keever's liability for the attorney's fees in this case, we conclude the trial court did not abuse its discretion in dismissing Keever's claim. Rich testified there was no written agreement with Keever to provide legal representation and said he had no opinion as to whether there was an oral agreement. There was no evidence adduced of any oral or written agreement with Keever on attorney's fees. To the

contrary, the evidence before the judge was that DISD hired Friedman to represent Keever, that the firm billed DISD for all legal fees, and that DISD paid those bills. Further, there is nothing in the record showing that there was any arrangement between Keever and DISD for the payment of his bills. *See Fielding v. Anderson,* 911 S.W.2d 858, 866 (Tex.App.—Eastland 1995, writ denied). The testimony by Rich that he thought Keever could be obligated for the fees was equivocal, at best. Under these circumstances, we conclude the trial court did not abuse its discretion in dismissing Keever's claim for attorney's fees. We overrule points of error A, B, C, E, F, G, H, and I.

Lastly, in point of error "J," Keever contends the trial court erred in ordering each party to pay its own costs. Specifically, Keever contends he was entitled to recover costs because (1) he was the successful party at summary judgment and (2) nothing in the record established good cause for taxing costs against him. On this point, we agree with Keever.

We review a trial court's award of costs under an abuse of discretion standard. *Hasty Inc. v. Inwood Buckhorn J.V.,* 908 S.W.2d 494, 502 (Tex.App.—Dallas 1995, writ denied). Absent an abuse of discretion, we will not reverse the trial court's assessment of costs. *See id.*

Rule 131 states: "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX.R. CIV. P. 131. Unlike the language in the TORA, which requires that the costs of litigation and attorney's fees be *incurred by* the substantially prevailing party, this rule only requires that the costs of court be incurred "therein," *i.e.,* as part of the litigation. In this case, there is no dispute that Keever was the successful party at summary judgment. Thus, he was entitled to recover his costs as the successful party except "for good cause, to be stated on the record." *See* TEX.R. CIV. P. 141.[4]

---

4. Rule 141 provides:
     The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules.

TEX.R. CIV. P. 141.

Here, the trial court did not state on the record why costs were assessed against Keever. Because the trial court failed to state good cause on the record, we conclude the trial court abused its discretion by assessing costs against Keever. *See* Tex.R. Civ. P. 131, 141; *see also Dover Elevator Co. v. Servellon*, 812 S.W.2d 366, 367 (Tex.App.—Dallas 1991, no writ) (concluding trial court abused its discretion in assessing costs against prevailing party without stating reasons for doing so). Accordingly, we sustain point of error "J" and reform the judgment to reflect that all trial court costs are assessed against Finlan and Venable.

### SANCTIONS ORDER

In eleven points of error, Friedman challenges the trial court's order imposing $18,000 in sanctions against him pursuant to Texas Rule of Civil Procedure 13. Generally, he complains: (1) the order lacks the specificity required by rule 13; (2) making false statements in an affidavit is not "good cause" as a matter of law; (3) the evidence is legally and factually insufficient to support the trial court's finding and any implied findings; (4) the amount of the sanction is unjust; (5) the trial court abused its discretion in increasing the amount of the sanction without notice or hearing; and (6) the trial court abused its discretion by failing to grant Friedman's motion for new trial.

Two weeks after the trial court signed the final judgment in this case, Finlan filed his second amended motion for sanctions pursuant to rules 13 and 166a(h) of the rules of civil procedure.[5] As the basis for the sanction, Finlan alleged that Friedman made false statements in an affidavit filed with the court on August 25, 1995, as part of Keever's motion for summary judgment. In particular, Finlan contended that, in the affidavit, Friedman "knowingly misrepresented" (1) the amount of attorney's fees by inflating them by $9,000 and (2) that the fees were "billed to" Keever when in fact the fees were billed to and paid by DISD.

The trial judge held a hearing on Finlan's motion on June 10, 1996. At the hearing, Rich testified that he believed the affidavit was "true" when it stated, "The reasonable and necessary attorneys' fees and expenses which have been billed to William Keever in this case for my services are $35,692.64." However, Rich said the bills were sent to DISD "regarding Mr. Keever." When asked whether any bills were sent to Keever, Rich said he did not know.

Friedman testified that the August 25, 1995 affidavit was his and, like Rich, he believed the statement with respect to billing to be "true." Likewise, he said he believed the amount of attorney's fees contained in the affidavit to be true.

Carver D. Peavy, a former DISD trustee, testified that he negotiated the contract with Friedman & Associates for DISD and that it "was very clear that all the work that Friedman & Associates would be doing would be paid for by the school district." Peavy said the agreement "had to do with all of the filings that were relative to Finlan and Venable and anything they would file ... that would be on an individual board member if they were acting in the capacity of a board member." Any acts taken "while they were not on the board would be a private issue" and were not covered by the agreement. Peavy also testified that he "vaguely" remembered telling Finlan that any bills that were supposedly sent to Keever "were sort of bogus bills that were made up for the court's sake." Peavy said the comment was made with reference to "another case" involving Finlan and Venable, not this one.

In contrast to the testimony of Rich and Friedman, Finlan testified about Exhibit Number 3, which reflected the attorney's fees billed to DISD in this suit. Finlan said he received the documents pursuant to discovery in October 1995. Finlan testified the first thirteen pages represented billings to DISD through August 25, 1995, the date of

---

5. Friedman does not challenge the order under rule 166a(h) of the rules of civil procedure, which was another ground asserted in Finlan's second amended motion for sanctions. Because of our disposition with respect to rule 13, and because it appears from the wording of the order that the trial judge based the sanction on rule 13, we will not address the applicability of rule 166a(h).

Friedman's affidavit. Finlan testified that he added up those numbers and the amount came to $26,080.14.

On cross-examination, Finlan said he did not know how much time was billed to the "Keever file" that was not reflected in those bills and also said he did not know whether there was time billed to the file that was not placed in a bill by the end of August.

At the conclusion of the testimony, the trial judge told Friedman that the language in the affidavit was "inaccurate based on the record" and asked Friedman if he wanted to explain "how it is not inaccurate."[6] Friedman said that while the affidavit was "probably unartfully drafted," it was nonetheless accurate. Friedman explained that his firm represented Keever in his official capacity as a school trustee and sent the bills to DISD. Further, Friedman explained that DISD was to "pay those bills so long as [Keever] was being sued in his official capacity." To the extent "it was determined by [the trial] court" that Keever was not being sued in his official capacity, Friedman stated that "it is my understanding that Mr. Keever bears personal responsibility for those bills."[7]

At the conclusion of Friedman's explanation, the trial judge stated:

[I]t does seem to me that language is untrue as to the out-and-out statement that the matters were billed to Mr. Keever. That statement is not true based on the evidence I have here before me today.

Additionally, the amount was inaccurate, overstated by some $9,000. It seems to me it's appropriate to impose a sanction against Mr. Friedman for starters at $9,000. And I'll increase that by 50 percent over that amount. $13,500 sanctions against Mr. Friedman; otherwise, the relief is denied.

The following day, the judge signed an order in which he made the following finding:

[U]pon considering the evidence presented by all parties, together with the argument

of counsel, the Court finds that Lawrence J. Friedman, attorney of record for William Keever, made false statements in an affidavit executed by him and filed with the Court in the above-styled and numbered cause and that, accordingly, good cause exists for the imposition of sanctions and the said Motions for Sanctions should be granted.

The judge then ordered Friedman to pay Finlan $18,000, not $13,500, as a sanction for his conduct. The amount of the sanction is double the amount of attorney's fees the trial court found were overstated in the affidavit.

On June 17, Friedman filed with the trial court an emergency motion to reconsider the sanction order. In the motion, Friedman asserted that Finlan and Venable obtained the sanction order through "deliberate misrepresentations." Friedman complained, in part, that:

(1) Finlan and Venable did not disclose to the trial court that Friedman's affidavit, filed with the court on August 25, 1995, was withdrawn six days later.

(2) Finlan falsely testified that other than Plaintiff's Exhibit 3, nothing else existed that reflected any other billings or time entries through August 25, 1995. Friedman asserted that Plaintiff's Exhibit 3 was only part of the billings and that additional time entries, reflected in other documents, were "deliberately hidden" by Finlan.

(3) Finlan's testimony that $26,080.14 was the total of all time entries was a "purposeful misrepresentation." Rather, Friedman asserted, the figure of $35,692.62 is the correct total for attorney's fees, and that figure was correct at the time the affidavit was proffered.

In the motion, Friedman also objected that the sanctions order did not comply with the "particularity" requirement of rule 13.

---

6. Specifically, the judge was referring to the following language:
   The reasonable and necessary attorneys' fees and expenses which have been billed to William Keever in this case for my services are $35,692.64.

7. We note that, at the April hearing on attorney's fees, Keever put on no evidence that any attorney's fees were incurred representing him individually, as opposed to his official capacity.

On July 8, 9, and 17, the judge held a hearing on the motion to reconsider.[8] At the hearing, Friedman presented evidence that the $9,000 had been incurred and billed to the "Keever file" as of August 25, 1995, although it had not actually been billed to DISD as of that date. Rather, the $9,000 was included in a "pre-billing worksheet" and was billed to DISD in November 1995.

With respect to the wording in the affidavit, i.e., that Keever was billed, Friedman explained the affidavit filed on August 25, 1995 was actually a "draft" affidavit prepared by associate David S. Reese. Friedman testified that he made corrections to the draft and, on the morning of August 25, disseminated the corrected draft to Reese to make the revisions. In particular, Friedman said he changed the language as follows: "The reasonable and necessary attorneys' fees and expenses which have been incurred representing William Keever in this case for legal services rendered and out-of-pocket expenses are $35,692.64." The revisions, however, were not made. Friedman said he signed the affidavit without reading it. Friedman testified the affidavit was withdrawn six days later for "tactical reasons" and denied it was related to Finlan and Venable's motion to obtain the attorney's fees records to support the motion. He testified it was never his intent to mislead the court.

Reese testified that after the trial court signed the June 11th sanctions order, he prepared the motion for reconsideration and instructed a clerk to search the files for "various items." On July 6, two days before the hearing on the motion, Reese said he began a search of the files and found the draft affidavit with Friedman's handwritten revisions in a folder labeled, "Motion to Com-

pel Not Filed." Reese said the draft affidavit was paper-clipped to the back of another document. He could not recall ever seeing the draft affidavit before July 6. The draft affidavit with handwritten corrections was admitted as evidence at the hearing.

Rich testified about the firm's billing practices and also testified that he instructed Reese, the weekend before the hearing on the motion to reconsider, to search the files for a copy of the draft affidavit. He said he did not remember if he instructed Reese to "go through the file page by page."

After the hearing, the judge modified the order to require the sanction to be paid fourteen days following the order on the emergency motion to reconsider.[9] No other orders followed, and Friedman appealed the sanction.

### A. "Particularity" Requirement of Rule 13

In his brief, Friedman argues his first, second, and third points of error together. In his first and second points of error, Friedman contends the trial judge failed to comply with the specificity provisions of rule 13, thereby invalidating the order and rendering it unenforceable. In particular, he complains the order does not: (1) state the particulars of what was "false" about the affidavit; (2) contain a finding that the affidavit was groundless, filed in bad faith or for purposes of harassment; and (3) find that whatever is "false" about the affidavit was "deliberately false." In his third point of error, he contends that "what purports to be 'good cause' for the sanction order is not 'good cause' as a matter of law." We first address whether the trial court's order sufficiently states the factual basis for its conclusion that good cause exists to impose sanctions.[10]

8. On July 10, Friedman filed a 26–page "Amended Motion for New Trial, To Alter And Amend Or Modify The Order, And For Reconsideration Regarding The Order Of June 11, 1996" in which he asserted primarily the same complaints raised in the motion to reconsider. He also asserted for the first time that he was entitled to a new trial based on newly discovered evidence.

9. Actually, the judge modified the June 11th order twice by orders dated July 17 and 26, as reflected by the "Order Further Modifying Sanc-

tion Order of June 11, 1996." Our record does not contain the July 17th order.

10. We note that Friedman objected to the lack of particularity in his motion to reconsider but did not secure a ruling on the motion from the trial court. Thus, it does not appear Friedman preserved this complaint via the motion to reconsider. However, Friedman also raised the complaint in his amended motion for new trial. We question whether a motion for new trial is a proper vehicle to attack a postjudgment order on sanctions. Nevertheless, in the interest of jus-

Rule 13, in pertinent part, provides:

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order.

TEX.R. CIV. P. 13. Thus, rule 13 imposes a duty on the trial court to point out with particularity the acts or omissions on which the sanction is based. *See Friedman & Assocs., P.C. v. Beltline Rd., Ltd.*, 861 S.W.2d 1, 2 (Tex.App.—Dallas 1993, writ dism'd by agr.). Requiring a trial court to state its reasons in the sanction order serves a twofold purpose: (1) it invites the trial court to reflect carefully on its order before imposing sanctions and (2) it informs the party of the offensive conduct so that he can refrain from committing the same or similar conduct in the future. *Id.* Compliance with rule 13 is mandatory, and failure to comply with the language of the rule is an abuse of discretion that renders the order unenforceable and warrants reversal. *Id.* at 3.

In this case, the trial court found that Friedman made "false statements in an affidavit executed by him and filed with the [c]ourt." We conclude that this finding spe-

cifically identifies the conduct on Friedman's part that was good cause for imposing the sanction. In reaching this conclusion, we have reviewed a number of cases in which the order failed to state the particulars of good cause. Unlike the order before us, those orders merely recited the conclusion that there was "good cause" to impose sanctions or simply granted the motion for sanctions without even reciting a conclusion.[11] The order before us cites the factual basis for the judge's conclusion that there is good cause to impose a sanction. Thus, the order satisfies the purpose of the rule, which is to ensure that the judge carefully reflect on his reasons for imposing sanctions and that the order inform Friedman of his offensive conduct so that he can modify his future conduct. To the extent Friedman argues that the order needed to specifically identify the particular falsehood, we disagree. This degree of specificity is not necessary to accomplish the purposes of the rule.

Friedman also argues that the "[m]ere use of the term 'false' does not in and of itself denote deliberate, bad faith conduct." Thus, he contends there can be no finding of good cause without a concurrent finding that the falsity was "deliberate." In his brief, he argues that this Court has previously found

tice, we will address Friedman's complaint on the lack of particularity.

**11.** *See Friedman*, 861 S.W.2d at 2–3 (order stated appellants were in violation of rule 13 and sanctions were appropriate, but did not recite or describe any facts to support the conclusion that good cause existed to impose sanctions); *Gorman v. Gorman*, 966 S.W.2d 858, 867 (Tex. App.—Houston [1st Dist.] 1998, writ denied) (op. on reh'g) (order stated that "Court also finds that the pleadings . . . are frivolous and groundless, there being no basis in law or fact for the claims asserted . . . and is further of the opinion that this action has been brought in bad faith and for purposes of harassment"); *Schexnider v. Scott & White Mem'l Hosp.*, 953 S.W.2d 439, 441 (Tex. App.—Austin 1997, no writ) (court recited that good cause was "[a] groundless petition brought against the non-party movants that is in bad faith and brought for the purpose of harassment"); *Tarrant County v. Chancey*, 942 S.W.2d 151, 155 (Tex.App.—Fort Worth 1997, no writ) (order stated that trial court found a motion was filed "for purposes of harassment, causing unnecessary delay, needles [sic] increase in the cost of litigating of Plaintiffs [sic] case, and for the purpose of

denying Plaintiff access to relevant documents"); *Thomas v. Thomas*, 917 S.W.2d 425, 432–33 (Tex.App.—Waco 1996, no writ) (order simply stated that "Court finds that Movant's Motion for Sanctions should be granted"); *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 69–70 (Tex. App.—El Paso 1994, writ denied) (order recited that the trial court, "having considered the Motions and being of the opinion that said Motions should be in all things GRANTED," ordered monetary sanctions); *Zarsky v. Zurich Management, Inc.*, 829 S.W.2d 398, 400 (Tex.App.— Houston [14th Dist.] 1992, no writ) (order stated that "the Court finds substantial evidence that this Third Party lawsuit . . . was frivolous and of no merit"); *GTE Communications Sys. Corp. v. Curry*, 819 S.W.2d 652, 654 (Tex.App.—San Antonio 1991, orig. proceeding) (order merely imposed sanctions without stating any facts or particulars of good cause); *Kahn v. Garcia*, 816 S.W.2d 131, 133 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding) (order concluded motions for sanctions were "meritorious"); *Watkins v. Pearson*, 795 S.W.2d 257, 260 (Tex.App.— Houston [1st Dist.] 1990, writ denied) (order recited that "for good cause being shown," monetary sanctions were imposed).

that "simply stating that a filing was 'false' does not fulfill rule 13's requirement that such sanctions be imposed only after specific findings of bad faith" and cites to *Luxenberg v. Marshall*, 835 S.W.2d 136, 140–41 (Tex. App.—Dallas 1992, orig. proceeding). We do not read *Luxenberg* to support such a proposition.

Initially, we note that *Luxenberg* was not a rule 13 sanctions case. Regardless, in *Luxenberg*, the trial court imposed sanctions after finding the relator's affidavit *"incorrectly states* that the verified facts are within his personal knowledge, when they were not, which action induced the Court to issue a TRO," not that he had made "false statements" in his affidavit. This Court first noted that the record did not support a claim that the sanctions were imposed under rule 13 and then specifically declined to address whether rule 13 "authorizes the imposition of sanctions for making a false verification." *Luxenberg*, 835 S.W.2d at 140 n. 3. Any analysis in *Luxenberg* with respect to rule 13 is merely dictum.

Finally, we find unpersuasive Friedman's argument that "false" in this instance does not necessarily mean "deliberately false" but can mean "simply erroneous or incorrect." We will not presume that the trial judge in this case lacked the ability to choose precise words, but conveyed the specific fact intended. The trial judge did not find that Friedman filed an affidavit with "incorrect" or "erroneous" statements; the judge found that Friedman, a lawyer in the case and the affiant, executed and filed an affidavit that contained "false" statements. We conclude the order is sufficient on its face to meet the requirements of rule 13. Accordingly, we overrule the first, second, and third points of error.

## B. Sufficiency of the Evidence

In his fourth, fifth, seventh, and eighth points of error, Friedman argues that there is no evidence or insufficient evidence to support (1) any implied finding of bad faith or harassment and (2) the trial court's find-

ing that the affidavit was false. In his sixth point of error, he contends the trial court's finding that the affidavit was false is incorrect as a matter of law. We disagree with Friedman on all points.

The imposition of rule 13 sanctions is within the sound discretion of the trial judge, and we will set aside that decision only upon a showing of a clear abuse of discretion. *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex.1993).

At the sanctions hearing, Finlan and Venable presented evidence that (1) Keever was not billed for any attorney's fees and (2) the amount stated in the affidavit was inflated by $9,000. They also presented the affidavit, filed and signed by Friedman, in which Friedman asserted that Keever was billed $35,692.64. Friedman did not controvert this evidence. Rather, he told the judge the affidavit's language was "accurate" albeit "unartfully drafted." Having reviewed the evidence, we conclude the trial court did not abuse its discretion in finding the affidavit false. Further, Friedman's signature on the affidavit constituted a representation by him that he read the contents of his affidavit and its contents were true and correct. The only other alternative is that Friedman signed the affidavit without reading it.[12] In either event, we cannot conclude that such conduct does not constitute bad faith.

We note that these points of error challenge the June 11th sanctions order. Therefore, in reaching our conclusion, we have considered only the evidence before the judge at the time of his decision. In this case, all of the evidence was adduced on June 10. Thus, contrary to Friedman's recitation of the facts in support of his position, we do not consider the evidence presented at the hearing on the motion to reconsider because Friedman is not challenging any ruling from that hearing. However, even if we considered that evidence, our result would be the same. Under an abuse of discretion, the trial court judged the credibility of the witnesses and was entitled to believe or disbe-

---

**12.** At the hearing on the motion to reconsider, Friedman in fact testified that he did not read the affidavit before signing it.

lieve any of Friedman's evidence. The trial court's choices among merely conflicting pieces of evidence cannot be an abuse of discretion. On the record before us, we cannot conclude the trial court abused its discretion in imposing sanctions. We overrule points of error four, five, six, seven, and eight.

### C. Amount of Sanction

In his ninth point of error, Friedman contends the trial court abused its discretion "because the amount of the sanction is unjust." Under this point of error, Friedman argues there was no finding of bad faith, harassment, dishonesty, or deliberate wrongdoing of any kind. Rather, he contends "an honest mistake was made" and the sanction is therefore "patently unjust."

■■■ When considering sanctions, the trial judge considers first whether the conduct was sanctionable and, if so, what sanction to impose. Under this point of error, Friedman does not analyze why the sanction imposed was unjust in light of the conduct found by the trial court and simply relies on the general statement that a sanction cannot be "excessive" in relation "to the supposed wrongdoing." He argues only that his conduct was not sanctionable in the first instance, and we have previously concluded to the contrary. Accordingly, we conclude he has presented nothing for review.

To the extent he argues that the award cannot be upheld under rule 166a(h), we have previously determined that the sanction was imposed under rule 13. Therefore, we need not address any argument with respect to rule 166a(h). We overrule the ninth point of error.

In his tenth point of error, Friedman complains the trial court abused its discretion by increasing the amount of the sanction "without notice or hearing." Friedman's full argument under this point is as follows:

> At the conclusion of the proceedings on June 10, the Court rendered a sanction in the amount of $13,500. When the Court signed the written order, the amount was changed to $18,000. This additional sanction was imposed without notice to [a]ppel-

lant, and without an opportunity to be heard concerning this additional sanction. Therefore, the additional sanction is invalid under Rule 13, Tex.R. Civ. P., which requires notice and hearing prior to imposition of sanctions, and also violates Appellant's right to due process and due course of law under the federal and Texas constitutions. Therefore, the sanction Order must be reversed.

Friedman does not explain, nor does he provide any support for, the proposition that the trial court's decision to increase the amount of the sanction is an "additional sanction" for which he was entitled to notice. Likewise, although he complains that his constitutional rights were violated, he again provides no analysis or case law to support his contention. We are not responsible for making Friedman's argument for him.

■■■ Texas Rule of Appellate Procedure 38 provides that a brief to this Court shall contain, among other things, a concise, nonargumentative statement of the facts of the case, supported by record references, and a clear and concise argument for the contention made with appropriate citations to authorities and the record. TEX.R.APP. P. 38.1 (formerly TEX.R.APP. P. 74(f)). Because Friedman does nothing more than summarily state his point of error, without citations to the record, legal authorities, or substantive analysis, we conclude he has failed to preserve this argument for review. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex. 1983) (interpreting rule 74); *Bowles v. Clipp*, 920 S.W.2d 752, 756 (Tex.App.—Dallas 1996, writ denied) (same); *Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc.*, 889 S.W.2d 666, 671 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (same). Accordingly, we overrule the tenth point of error.

### D. Motion for New Trial

In his eleventh point of error, Friedman complains the trial court abused its discretion by failing to grant his motion for new trial. In particular, he argues that a new trial should have been granted because of newly discovered evidence, *i.e.*, a draft affidavit with his handwritten revisions. Again, assuming without deciding that a motion for

new trial is a proper motion to attack a postjudgment sanctions order, we disagree with Friedman.

A party seeking a new trial on the ground of newly discovered evidence must show the trial court that: (1) the evidence has come to his knowledge since the trial; (2) it was not owing to the want of due diligence that it did not come sooner; (3) it is not cumulative; and (4) it is so material that it would probably produce a different result if a new trial were granted. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983).

Whether to grant such a motion is within the sound discretion of the trial court, and the trial court's action will not be disturbed on appeal absent an abuse of such discretion. *Id.* In considering the motion, the trial court considers the weight and the importance of the new evidence and its bearing in connection with the evidence received at trial. *Id.* "The inquiry [is] not whether, upon the evidence in the record, it apparently might have been proper to grant the application in the particular case, but whether the refusal of it has involved the violation of a clear legal right or a manifest abuse of judicial discretion." *Id.* Every reasonable presumption will be made on review in favor of orders of the trial court refusing new trials. *Id.*

Having reviewed the factors set forth in *Jackson,* we conclude that, under the facts of this case, the refusal to grant the new trial did not "involve the violation of a clear legal right or a manifest abuse of judicial discretion." Although the draft affidavit was not located until two days before the hearing on the motion to reconsider, Friedman failed to show that he was diligent in attempting to locate the affidavit before the original hearing. Friedman knew, based on the allegations in Finlan's motion for sanctions, that he was accused of making a "knowing misrepresentation" to the court on attorney's fees in his affidavit. Thus, the affidavit, having been located in Friedman's files, could have been located earlier with the exercise of diligence. Even if we disregarded that fact, however, there is nothing to show that the affidavit would probably have produced a different result. Friedman said he executed an affidavit without reading it and thereafter filed it with the trial court. The draft affidavit does nothing to alter that contention. Accordingly, we overrule Friedman's eleventh point of error.

## RULE 45 SANCTIONS

In his fifth cross-point of error, Finlan urges this Court to assess sanctions against Keever under former Texas Rule of Appellate Procedure 45 (formerly rule 84). He argues that "it is patently outrageous that Keever, in his brief to this Court, would seek to recover *his* costs of appeal," that the request "represents bad faith conduct," and that Keever should therefore "be sanctioned."

Before this Court may assess damages against an appealing party under this rule, we must find that (1) the appeal was taken for delay and (2) there was no sufficient cause for appeal. *James v. Hudgins,* 876 S.W.2d 418, 424 (Tex.App.—El Paso 1994, writ denied) (op. on reh'g) (interpreting former rule 84). In making such findings, this Court must review the record from the standpoint of the advocate to determine whether he had reasonable grounds to believe the judgment should be reversed. *Id.*

In this case, Keever filed a brief, citing authority, with ten points of error and presented oral argument to this Court. We have sustained one of the points of error and are reforming the trial court's judgment accordingly. Consequently, we cannot conclude that Keever had no reasonable grounds to believe that the judgment should be reversed. Accordingly, we overrule Finlan's fifth cross-point of error.

In conclusion, we reform the trial court's judgment to assess trial court costs against Finlan and Venable. We affirm the trial court's judgment, as reformed, dismissing Finlan's claims against Keever and dismissing Keever's claims for attorney's fees. Further, we affirm the trial court's order sanctioning Friedman.