ANN CRAWFORD McCLURE, Chief Justice
The central issue presented is whether the trial court committed reversible error by excluding an expert witness. A secondary issue alleges that the trial court had a duty to issue findings of fact and conclusions of law to explain why it struck the expert. Because we cannot conclude the trial court's order probably caused the rendition of an improper judgment, we affirm.
FACTUAL SUMMARY
This lawsuit arises out of a contract between the Housing Authority of El Paso (HACEP) and Beltran Electrical Contractors, Inc. (Beltran). In 2007, HACEP hired Beltran to replace a "switch gear" at a HACEP facility. As a part of that work, Beltran needed to turn off the power to the building over President's Day weekend. HACEP, however, needed to maintain power to one room housing its emergency communications system and a computer. To power that room, Beltran brought in a portable generator. HACEP contends that because the generator provided too much voltage, the communications system, several hard drives on its computer, and an air-conditioning unit in the room were damaged.
HACEP filed suit, asserting a breach of contract and breach of warranty theory. The petition alleged that because of "problems with the generator, a number of electrical devices were severely damaged at HACEP." The breach of warranty claim specifically asserts that Beltran failed to "properly replace the switch gear."
Answering these two allegations, Beltran filed a motion for summary judgment. The motion included the deposition testimony of Andy Cook, an employee of the engineering firm that had overseen the project for HACEP. Cook concluded that Beltran had timely performed its obligations in a good and workmanlike manner. The motion also asserted no evidence *710 grounds. TEX.R.CIV.P. 166a(i) (after an adequate time for discovery, a party may assert there is no evidence of one or more elements of a claim or defense). The no evidence portion of the motion claimed that HACEP had no evidence of any material breach of contract, no evidence of any breach of warranty, nor any evidence that any breach of the contract or warranty was a producing cause of damages.
HACEP's response clarified that it was asserting two distinct breach of contract claims. In one claim, HACEP contended that Beltran had failed to list HACEP as an additional insured on Beltran's insurance policy. Second, HACEP alleged that Beltran breached the contract by using a 208 volt instead of a 110 volt generator to power the equipment room, causing damage to an air conditioner and computer hard-drives. As proof, HACEP attached several contract documents, and a drawing that in part reflects that Beltran was responsible for providing temporary power to the equipment room during the project. Under the contract, Beltran was obligated to repair or replace any structures or equipment damaged during the project. HACEP also included an affidavit from Dr. Eric MacDonald, who is a professor of Electrical Engineering at the University of Texas at El Paso. Dr. MacDonald opined that:
It is my opinion that the damage to the various electrical devices at the Housing Authority was caused by overvoltage meaning that the temporary generator which was used was set a higher voltage setting which in turn damaged all of the electrical devices which were connected to it.
Dr. MacDonald attached a report to his affidavit that further explained his opinion (and which we elaborate on below).
To substantiate the underlying facts of what transpired that weekend, and to prove the timing of when the electronics were damaged, HACEP attached the affidavit of Juan Olivera, its Director of Development & Capital Projects. He in turn attached to his affidavit a memo from Gilbert Cruz, a HACEP maintenance supervisor. Cruz's memo states that when Beltran turned on its portable generator, the air-conditioner in the equipment room did not start. When HACEP examined the air-conditioner, it discovered that the motor was burned out. That same weekend, HACEP learned its phone system was not working. When Beltran tried to address that issue by "moving wires around" to power the phone panel, a "noise came from the phone panel" and a back-up battery on the system was "burned."
Beltran objected to both Dr. MacDonald's and Olivera's affidavits. Without ruling on either of those objections, the trial court initially denied Beltran's motion for summary judgment. Beltran then deposed Dr. MacDonald, and subsequently filed a more comprehensive motion to strike his opinions. Following an evidentiary hearing, the trial court granted the motion to strike.
Beltran then asked the trial court to reconsider its denial of the motion for summary judgment. Following additional argument, the trial court sustained the objections to parts of Olivera's affidavit, including the Cruz memo, and granted a partial summary judgment for Beltran on the equipment damage claim. The remaining contract issue-whether Beltran failed to list HACEP as an additional insured-was then tried to the court and decided against HACEP. In this appeal, HACEP does not challenge the ruling on the additional insured issue, nor the striking of portions of the Olivera affidavit, and instead confines its argument solely to the trial court's decision to strike Dr. MacDonald.
*711 HACEP brings two issues on for review. The first contends that the trial court abused its discretion in striking Dr. MacDonald's opinions. The second issue faults the trial court for not issuing findings of fact and conclusions of law to explain why it struck Dr. MacDonald.
NO NECESSITY FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW
We address HACEP's second issue first-the failure of the trial court to make findings of fact and conclusions of law-because it seeks a remand for findings prior to our reaching the merits. While HACEP filed a request for findings of fact and conclusions of law below, we find no requirement for such findings when the trial court strikes an expert witness.[1]
In any case tried in a district or county court without a jury, a party may request the court to state in writing its findings of fact and conclusions of law. TEX.R.CIV.P. 296. Once a party makes a proper request under Rule 296, the trial court is obligated to make findings of fact and conclusions of law. See TEX.R.CIV.P. 297 ("The court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed."). Nonetheless, a party is not entitled to findings of fact and conclusions of law in every case. For instance, findings are not appropriate when the trial court renders judgment as a matter of law because they serve no purpose and should not be requested, made, or considered on appeal. IKB Indus. (Nigeria), Ltd. v. Pro-Line Corp. , 938 S.W.2d 440, 443 (Tex. 1997) (findings have no purpose and should not be requested for summary judgments, judgment after directed verdict, judgment non obstante veredicto, default judgments awarding liquidated damages, dismissal for want of prosecution without an evidentiary hearing, dismissal for want of jurisdiction without an evidentiary hearing, dismissal based on the pleadings or special exceptions, and any judgment rendered without an evidentiary hearing).
Another line of cases holds that when a trial court makes a discretionary decision-one we review under the abuse-of-discretion standard-the trial can, but is not required to issues findings of fact and conclusions of law. See Davis v. Spring Branch Med. Ctr., Inc. , 171 S.W.3d 400, 413 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (concluding trial court did not err in denying request for findings of fact and conclusions of law under Rule 296 because standard of review was abuse-of-discretion); Samuelson v. United Healthcare of Tex., Inc. , 79 S.W.3d 706, 710 (Tex.App.-Fort Worth 2002, no pet.) (noting that when abuse-of-discretion review applied to trial court's ruling, findings of fact and conclusions of law are helpful, but not required); Keever v. Finlan , 988 S.W.2d 300, 306-07 (Tex.App.-Dallas 1999, pet. dism'd) (same); Crouch v. Tenneco, Inc., 853 S.W.2d 643, 649 (Tex.App.-Waco 1993, writ denied) (same). We review a decision to admit or strike an expert opinion under the abuse-of-discretion standard. Helena Chem. Co. v. Wilkins , 47 S.W.3d 486, 499 (Tex. 2001) ; Broders v. Heise , 924 S.W.2d 148, 153 (Tex. 1996).
HACEP cites no direct authority that the trial court is required to issue findings of fact and conclusions of law when it *712 resolves a Rule 702 issue. Given the ubiquitous nature of expert challenges, we are reluctant to impose such a duty on busy trial courts. See Chrysler Corp. v. Blackmon , 841 S.W.2d 844, 852 (Tex. 1992) (noting consideration of burden to trial court if findings were required in every instance when death penalty sanctions are awarded). In some cases, it might be helpful for us to know which of the several expert admissibility requirements form the basis of the trial court's ruling. On this record, however, we cannot say the trial court was under an obligation to make specific findings. We overrule Issue Two.
NO REVERSIBLE ERROR IN STRIKING DR. MACDONALD'S OPINIONS
HACEP's first issue challenges the trial court's ruling which struck Dr. MacDonald's opinion in total. We conclude that if some, or even all of the opinions were admissible, the trial court would still have been justified in granting partial summary judgment, thus HACEP has not shown the trial court committed reversible error.[2]
Dr. MacDonald's Opinion
HACEP hired Dr. MacDonald to articulate a reasonable explanation for the damage to the electronics equipment following the work at HACEP's facility.[3] To accomplish that task, he performed a site inspection at the building almost three years after the incident. He collected a manual for the portable generator at issue, and the specifications for what he described as similar hard drives to those that failed. He did not inspect any of the actual failed equipment, but looked at photographs of some of the failed components. He did not specifically recall reviewing the contract or construction documents, and did not review any depositions, nor talk to any witnesses. He assumed the sequence of certain events, all as described to him by HACEP' counsel.[4]
Based on that information, he concluded that the most likely scenario accounting for the failure of the air conditioner, the computer, and a phone system was a voltage overload. He concluded that the capacitor on the air-conditioner motor had "blown." A capacitor generally consists of two metal plates separated by a di-electric material. The di-electric material will fail if exposed to excess voltage. The computer system actually had five disc drives set up in a redundant system because hard drives will fail through normal use. Dr. MacDonald calculated that the odds of three of *713 five hard drives all failing at or about the same time would greatly exceed the odds of picking the winning numbers in the lottery. The most that he could say about the battery failure in the telephone system was that it would be "in line with an overvoltage" but that it "could probably be explained by a variety of other things, as well." Dr. MacDonald then concluded that the other plausible reasons for why each of these components might fail-fire, physical insult, vandalism, normal wear and tear-did not happen based either on the photos he saw, or what he was told. Based on the failures occurring all within a seventy-two hour time frame, and all occurring as Beltran provided power through its portable generator, Dr. MacDonald concluded that an over-voltage event was the most likely culprit in causing the equipment failures.
The Challenge
Beltran challenged Dr. MacDonald on each of the predicates required for expert testimony under TEX.R.EVID. 702. It contended that he was not qualified. Cooper Tire & Rubber Co. v. Mendez , 204 S.W.3d 797, 800 (Tex. 2006) (in deciding whether an expert is qualified, the trial court must ensure they truly have expertise concerning the "actual subject about which they are offering an opinion."). It contended his opinion is not helpful because it adds nothing beyond what the jury already knows. K-Mart Corp. v. Honeycutt , 24 S.W.3d 357, 360 (Tex. 2000) (testimony that is already within the common knowledge of a jury is not helpful and not admissible). Beltran further contended that the testimony was not "sufficiently tied to the facts of the case [so] that it will aid the jury in resolving a factual dispute." E.I. du Pont de Nemours and Co., Inc. v. Robinson , 923 S.W.2d 549, 555 (Tex. 1995) [citations omitted]. It also contended in varying ways that the opinion was not reliable. Gharda USA, Inc. v. Control Solutions, Inc. , 464 S.W.3d 338, 348-49 (Tex. 2015) (reliability requirement also includes consideration of whether "there is too great an analytical gap" between the data on which the expert relies and the opinion offered).
The parties brief each of these issues in depth. What they do not address, however, is whether the trial court's ruling on the admissibility of Dr. MacDonald's opinion was prejudicial in the sense that the trial court's ruling on the partial summary judgment would have been any different.
Any Error Must be Reversible
Even if we find a trial court committed error, we are still obligated to decide if the error is reversible. TEX.R.APP.P. 44.1(a)(1) (an error is not reversible unless it "probably caused the rendition of an improper judgment"). HACEP carries that burden. See Mullendore v. Muehlstein , 441 S.W.3d 426, 429-30 (Tex.App.-El Paso 2014, pet. abated) ; In re Marriage of Scott , 117 S.W.3d 580, 584 (Tex.App.-Amarillo 2003, no pet.) (holding that an appellate court "may not reverse the judgment of the trial court" unless the appellant satisfies this burden); Meachum v. Comm'n for Lawyer Discipline , 36 S.W.3d 612, 615 (Tex.App.-Dallas 2000, pet. denied) (same). To meet that burden, HACEP must show that the erroneously excluded evidence was controlling on a material issue dispositive of the case, was not cumulative, and its absence resulted in an improper judgment. See Tex. Dep't of Transp. v. Able , 35 S.W.3d 608, 617 (Tex. 2000) ("To put it another way, a successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted.").
Because Dr. MacDonald's affidavit and opinions were struck, the trial court reconsidered and granted Beltran's motion for *714 partial summary judgment on one of the breach of contract theories, and the breach of warranty claim. Thus, for HACEP to show reversible error here, we must be convinced that if the admissible opinions are part of the summary judgment record, the partial motion for summary would be denied. See Gunville v. Gonzales , 508 S.W.3d 547, 556 (Tex.App.-El Paso 2016, no pet.) (considering improperly excluded evidence in de novo review of motion for summary judgment); Moreno v. Quintana , 324 S.W.3d 124, 128-29 (Tex.App.-El Paso 2010, pet. denied) (same); Fraga v. Drake , 276 S.W.3d 55, 63 (Tex.App.-El Paso 2008, no pet.) (same).
Dr. MacDonald's Opinions Are Only as Strong as the Assumptions Upon Which They are Built
Dr. MacDonald's opinion is limited to the discreet question of whether certain electronic components, more likely than not, were subject to damage from excess voltage. Nothing in his opinion independently establishes who generated the excess voltage. Nothing in his opinion establishes why, or even when, excess voltage was applied to the circuits. He reviewed no material that allowed him to express an opinion on those matters, and all of the facts about the sequencing of when the components failed were all provided to him as assumptions by HACEP's counsel. The force of his opinion is therefore only as strong as the assumptions upon which it rests.[5]
HACEP Carried the Obligation to Prove Those Assumptions
When a party presents an expert witness who relies on assumed facts, the Texas Supreme Court has required that the party provide some proof of the material assumptions. The origin of this requirement can be traced back at least as far as Schaefer v. Texas Emp. Ins. Ass'n , when an expert's causation opinion assumed that a worker was exposed to contaminated soil. 612 S.W.2d 199, 203 (Tex. 1980). Because there was no proof at trial that the worker was in fact exposed to contaminated soil, the expert's conclusion was no evidence of causation. Id. The court dealt with an analogous situation in Burroughs Wellcome Co. v. Crye , when an expert testified that a patient suffered from frostbite. 907 S.W.2d 497, 499-500 (Tex. 1995). The conclusion was based on the assumption that the patient's skin did not appear red at a particular point in time. Id. Because the trial record established just the opposite, the expert's opinion amounted to no evidence. Id. ("When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment.").
The Texas Supreme Court reiterated the rule more recently in Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch , 443 S.W.3d 820, 832-33 (Tex. 2014). There, a real estate appraiser based *715 her opinion on certain assumptions about comparable property sales. The court found the opinion amounted to no evidence to support a damage finding, in part, because the appraiser's assumptions were unproven at trial. Id. at 830. Certainly, an expert's factual assumptions need not be uncontested, or established as a matter of law. Id. A fact finder would necessarily decide if the facts support a contested assumption. Id. ,citing Cooper Tire & Rubber Co. v. Mendez, 204 S.W.3d 797, 804 (Tex. 2006). "Nor does it mean that parties must prove up every inconsequential assumption on which their expert relies. But if the record contains no evidence supporting an expert's material factual assumptions, or if such assumptions are contrary to conclusively proven facts, opinion testimony founded on those assumptions is not competent evidence." Id. Otherwise, the party with the burden of proof on an issue such as causation could sidestep "the obligation to put forth evidence by simply instructing their expert to assume the fact in forming their opinions." Id.
Mel Acres Ranch , Cry e, and Schaefer all held that an expert opinion amounted to no evidence following a jury trial. Here we deal with a no evidence motion for summary judgment. Yet even recognizing that a litigant need not marshal all of its evidence to overcome a no evidence motion, it still must put forward enough evidence to overcome a directed verdict as it would at trial. King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 750-51 (Tex. 2003).
The Trial Court Rulings on Beltran's Other Objections Negated Any Proof of Dr. MacDonald's Key Assumptions
Dr. MacDonald's opinion is centrally premised on the unlikelihood of three different components (the air conditioner, the phone system, and the three computer hard drives) all failing on the same weekend but for some "event." He was told a motor burned out on the air conditioner that weekend from a blown capacitor. Because that kind of damage usually comes from excess voltage, he concluded that the "event" was an over-voltage situation. He was told a battery went bad on the phone system after the generator was powered. He was also told that three of five computer hard drives failed that weekend.
To prove up the actual sequencing of events, HACEP relied on the affidavit of Juan Olivera. His affidavit does not describe any sequence of events itself, but rather attaches a memo by another HACEP employee, Gilbert Cruz. Cruz's memo sets out the sequencing of events when the power was turned off, turned backed on, and when some of the damage to the components was discovered. Beltran objected to the memo on several grounds, including hearsay, and the trial court sustained the hearsay objection. Accordingly, we cannot consider Cruz's memo as substantive evidence. One paragraph of Olivera's affidavit purports to describe the contents of Cruz's memo; but we cannot consider his paraphrasing of a memo that the trial court excluded. The trial court also sustained an objection to Olivera's affidavit as to the cause of damage to the telephone system, the computer, and the air-conditioner.
Stripping away these portions of Olivera's affidavit, the only substantive evidence that HACEP has to meet the no evidence summary judgment are the contract documents showing that Beltran was hired to replace the switch gear. Beltran's affirmative motion for summary judgment included the deposition of Andy Cook, the employee of the engineering firm that had overseen the project for HACEP. Even if we consider his deposition, the most it shows is that HACEP required Beltran to provide a portable generator for the equipment room. On the Friday before the *716 President's Day weekend, the electric company turned off power to the building, and replaced its transformer. When the portable generator was hooked up to the equipment room, the air conditioner for that room did not work, but Cook made some reference to the chiller unit on the roof being in pieces. Cook testified that Beltran would have used a voltage meter to test the power before hooking up the generator, but he did not personally witness the power being tested. At the time the contract was closed, HACEP made no claim of any damage to its equipment, though the usual procedure would have been to include damaged items on a punchlist, or to withhold money from the final construction payment. The first time Cook learned of any claim for damage was from a phone call from HACEP's attorney. Cook doubted the claim, however, because in past experiences with HACEP, its employees had damaged equipment after the close of a contract and then blamed the contractor.
Without the stricken portions of Olivera's affidavit and the Cruz memo, there is no evidence in the summary judgment record establishing the temporal proximity between when the generator was powered up, and when the equipment was damaged.[6] Nor is there evidence of damage to all of the specific components of which Dr. MacDonald opines. In sum, there is no evidence of any of the material underlying assumptions that Dr. MacDonald relied upon. Thus even if we found Dr. MacDonald qualified and his methodology reliable, his opinions about the cause of why components failed would be no evidence. Even applying the liberal rules of review of summary judgments,[7] we would affirm the trial court granting of the partial summary judgment on the equipment damage claim. We overrule Issues One and Two and affirm the judgment.

The trial court did conduct a non-jury trial on HACEP's claim that Beltran failed to list HACEP as an additional insured on Beltran's policy. The trial court ruled against HACEP on that claim, which resulted in a final judgment. HACEP did not request findings of fact and conclusions of law germane to that non-jury trial. We only deal with its request for findings germane to striking its expert.

Neither party to this appeal directly addresses whether any error in striking Dr. MacDonald constitutes reversible error. This court, however, has an obligation to consider harm before granting relief under Tex.R.App.P. 44.1(a)(1) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment.").

The trial court had the following substantive evidence before it at the time it struck Dr. MacDonald's opinion: (1) Dr. MacDonald's affidavit with attachments as appended to HACEP's Response to Motion for Summary Judgment; (2) Dr. MacDonald's deposition; and (3) Dr. MacDonald's live testimony from the hearing. We restrict our review to that evidence.

Of this point, there is no dispute:
[Beltran's Counsel]: Are the factual assumptions that you make in your report and the conclusions that you reach, did those come from plaintiff's counsel?
[Dr. MacDonald]: Yes, 100 percent.
...
[Beltran's Counsel]: Okay. Assume that's true-and I understand you haven't reviewed any depositions, so all your facts come from plaintiff's counsel, okay? That's your source of facts, correct?
[Dr. MacDonald]: Okay, yes.

For instance, the timing of when additional current might have been applied to the components was essential to his opinion. When he was asked whether the electric company's change out of the transformer that same weekend was important he stated:
[Beltran's Counsel]: Because it could have happened before?
[Dr. MacDonald]: I guess I don't know the timing of the failure; so, no, I can't say.
[Beltran's Counsel]: Would knowing the timing be important to you in analyzing failure of these components?
[Dr. MacDonald]: Yeah. Well, it wouldn't-it would tell me-yeah, of course, it would tell me where the potential overvoltage came from.

Beltran objected to any references in HACEP's brief to evidence admitted at the bench trial on the remaining breach of contract issue. We agree that evidence from the bench trial is not germane to the question to whether the trial court properly granted the partial summary judgment. HACEP did not urge the trial court to reconsider its ruling during that trial, nor does it raise as an issue here as to the failure of the trial court to grant its motion for new trial.

We review a trial court's decision to grant summary judgment de novo . Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010). We review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006).