

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00060-CV

_____

IN THE GUARDIANSHIP OF EDWIN J. ALFORD, AN INCAPACITATED PERSON

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 871-CCL

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

## O P I N I O N

Fredye Long Alford (Alford) was appointed guardian of the person and estate of her husband, Edwin J. Alford (Edwin), an incapacitated person. While Alford was out of the country, the trial court received complaints from Edwin's sister about Edwin's welfare. As a result, the trial court appointed John Delk as attorney ad litem and requested that he check on Edwin's welfare. Alford appeals the order authorizing payment of Delk's attorney fees.

On appeal, Alford argues the following: (1) the order appointing Delk was issued without authority, (2) the trial court's subsequent finding that Delk's services were no longer required barred compensation for his services, (3) the order to pay attorney fees is ambiguous, (4) the trial court erred in failing to enter findings of fact and conclusions of law, (5) the reasonableness of Delk's fees were a question of fact, and (6) the evidence is factually insufficient to support the attorney fee award.

We find that the Texas Estates Code authorized Delk's appointment and payment for services rendered, the order to pay attorney fees is clear, there was error in the trial court's omission of findings of fact and conclusions of law, and factually sufficient evidence supports the trial court's finding that Delk's fees for work he completed were reasonable and necessary in light of Alford's actions in failing to comply with the trial court's order authorizing Delk's appointment.

However, we find that a portion of fees charged for work done by Delk's paralegal must be deleted. As a result, we modify the trial court's judgment to reflect a reduced attorney fee award of $3,057.40. As modified, we affirm the trial court's judgment.

2

## I.    Factual and Procedural Background

Edwin was placed in hospice care in August 2018 due to his chronic obstructive pulmonary disease, and he was also diagnosed with dementia. Alford initiated guardianship proceedings, and the trial court appointed Delk as Edwin's attorney ad litem.[1] Alford was appointed as the guardian of Edwin's person and of his estate, and, at that point, Delk's appointment terminated.

In February 2019, Edwin's sister, Jean Climer, called the trial court during a period when Alford was out of the country. As a result of Climer's negative reports on Edwin's welfare, on February 20, the trial court found, on its own motion, that it was necessary and in Edwin's best interests to reappoint Delk as Edwin's attorney ad litem to "prepare a report on the current status of the Ward and make any appropriate recommendations to the [trial] [c]ourt." When Alford was notified of Delk's appointment, she asked Edwin's caregiver, Todd Wilson, to relay the news to Edwin. Wilson testified that when he told Edwin about the appointment, Edwin said, "[T]hat SOB is not going to represent me, and if he tries to come out here, you better not let him in that gate."

Alford did not comply with the trial court's order and admitted to denying Delk access to Edwin on two occasions. On February 22, Alford filed an objection to Delk's appointment on behalf of Edwin, who "refuse[d] to speak with the attorney ad litem appointee as he [felt] he was disrespectful to him in the past and did not communicate well." Alford added that Edwin was "very agitated" about Delk's appointment, objected to the expense, and prayed "that a non-lawyer be appointed as Guardian Ad Litem to hopefully end this harassment and . . . award of expenses."

---

[1]"'Attorney ad litem' means an attorney appointed by a court to represent and advocate on behalf of . . . an incapacitated person." TEX. EST. CODE ANN. § 1002.002.

In addition to the original objection, Alford filed two supplemental objections to Delk's appointment, supported by affidavits of Edwin's caretakers, and a separate response to the order appointing Delk, made discovery requests of Delk, sent emails to his office regarding the matter, hired another attorney to represent her at a hearing regarding the reappointment, and at some point, filed a grievance against Delk with the State Bar of Texas, which was dismissed.

As of the April 11, 2019, hearing, Delk had been unable to perform the duties assigned him by the trial court's February 20 order because of Alford's objections and failure to comply with the order. At the hearing, Tashina Beveill, a nurse employed by Hospice of Texarkana, testified that Edwin did not "care for [Delk] very much" and was upset about Delk's appointment. Edwin's dislike of Delk was also confirmed by Wilson and Alford.

The hearing also established that Climer's reports that Edwin was not being cared for were false.[2] Beveill testified that she made home visits, assessed Edwin's health, and determined that Alford provided Edwin with proper "24-hour care." The evidence showed that Alford had employed Linda Barnard to care for Edwin during the day and Wilson to care for him in the evening and night. Mark Shermer, a deputy with the Bowie County Sheriff's Office, testified that he conducted a wellness check in February because Climer had called the police to report that Edwin was "being held hostage." Shermer spoke with Edwin and determined that he was clean and cared for. Delk testified that after speaking several times with Climer, he believed her to be "a little bit batty."

---

[2]The record established a family disagreement between Climer and Alford.

4

Alford admitted that she did not comply with the court's order because she could not "let [her] husband be exposed to Mr. Delk." Delk argued that "all the expenses and time . . . incurred . . . [were] due to the guardian's refusal to allow [him] to perform [the] function" for which he was appointed. He also argued that he spent time responding to Alford's allegedly frivolous discovery requests, including requests for production.

After hearing the evidence regarding Edwin's welfare, Delk and the trial court agreed that an attorney ad litem was no longer needed, and Delk's appointment was terminated. However, the trial court explained that it had appointed Delk as a result of Climer's reports that Edwin was not being cared for at a time when Alford, his guardian, was out of the country. The trial court specifically found that Alford failed to comply with its order and added, "I think what we have here is a lot of animosity between [Alford] and [Delk]. Frankly, I think that's the crux of the problem here." The trial court also said, "[W]e've made a mountain out of a mole hill," and told Alford that the reason for "another day of litigation, more expense, [and] more inconvenience for everyone" was the result of her failing to comply with the trial court's appointment.

After the hearing, Delk made an application for attorney ad litem fees. The application stated that Delk "performed all of the services required" and requested the following fees:

| **Attorney Ad Litem Fees** | |
| --- | --- |
| 13.3 hours at $250.00 per hour & 85.00 staff time | $3110.50 |
| []Expenses and reimbursements | $   6.40 |
| **Total Attorney's Fees and Expenses** | **$3116.90** |

Alford filed an objection to the unitemized expenses on Edwin's behalf and argued that Delk made a summary claim for attorney fees that was not verified by oath and included filing fees, which

were exempt under Section 1155.151(a-2) of the Texas Estates Code.[3]  Because Edwin refused to speak with Delk, the objection to his fees argued that the expenses were "outrageous and unreasonable" and asserted that Delk "did nothing but send the Guardian his ex parte communications with the Judge."[4]  Alford, who had propounded discovery requests to Delk, objected to his charges for reviewing the file because he was only asked to check on Edwin's welfare.

In response, Delk filed an itemized invoice totalling $3,119.00 that showed each action taken in the case and that the expenses were for copies, not filing fees.  He also filed an affidavit that explained his work in the case, set out the basis for his attorney fees, and attached his itemized invoice.  Yet, Alford continued to paper the file.  She filed objections, briefs, and affidavits contesting the fees that essentially restated previously made arguments and attached previously filed exhibits.  She had also filed a motion to recuse the trial judge and accused Delk of violating the Disciplinary Rules of Professional Conduct.  When the trial judge voluntarily recused, the new judge, sitting by assignment, entered an order approving Delk's $3,125.40 fee in total.[5]  Alford appeals from this order.

---

[3]Delk's verification on the application for attorney fees stated, "[The] Application contains a correct and complete statement of the facts and matters to which it relates and all the contents therefore are true, complete and correct to the best of Applicant's knowledge."

[4]Alford mistakenly asserted that Delk requested an ex parte appointment.  The record showed that the trial court orally appointed Delk sua sponte and that the court clerk communicated with Delk about the appointment.

[5]The differences in the amounts of attorney fees involved will be explained later in this opinion.

6

**II. Section 1054.007 of the Texas Estates Code Authorized Delk's Appointment and Payment for Services Rendered**

Alford argues that the trial court's order reappointing Delk as attorney ad litem was issued without authority.[6] She also argues that he was not entitled to attorney fees. Yet, Section 1054.007 of the Texas Estates Code states that "a court may appoint an attorney ad litem in any guardianship proceeding to represent the interests of . . . an incapacitated person," TEX. EST. CODE ANN. § 1054.007(a)(1), and that "[a]n attorney ad litem appointed under this section is entitled to reasonable compensation for services provided in the amount set by the court, to be taxed as costs in the proceeding," TEX. EST. CODE ANN. § 1054.007(b).

Although Alford argues that an attorney ad litem can only be appointed "when a proceeding is initiated or when complete restoration of the ward's capacity or other modification of the guardianship is sought," "[t]he term 'guardianship proceeding' means a matter or proceeding related to a guardianship or any other matter" related to Title III of the Texas Estates Code, TEX. EST. CODE ANN. § 1002.015 (Supp.). Thus, as long as the matter is related to a guardianship, which this is, Section 1054.007 applies. As a result, we find that Section 1054.007 of the Texas

---

[6]Alford writes, "Allegations of abuse or neglect of an incapacitated person are very serious. However, mere telephone calls from a sister out of state who has not seen the Ward for four (4) years does not in any fashion justify entry of any ex parte order. Why should the Ward have to pay for this mistake?" This is not a legal argument.

Estates Code authorized Delk's appointment and payment for services rendered.[7]  We overrule

Alford's first point of error.[8]

## III.  The Order to Pay Attorney Fees Is Clear

Alford argues that the order to pay attorney fees is ambiguous because it requires the

attorney fees to be paid by the "Applicant," without defining the term "Applicant."  Because Delk

was appointed on the trial court's motion, Alford argues that there was no "Applicant."  However,

the trial court's docket lists Alford as the "Applicant" in this case.  Thus, the trial court's order

unambiguously requires her to pay Delk's fee.  We overrule Alford's second point of error.

---

[7]Additionally, we note that Section 1054.103 of the Texas Estates Code provides that "[a] court[,] . . . during the pendency of a guardianship of the person or estate, may appoint a court visitor to evaluate the ward . . . and provide a written report . . . on . . . (2) the court's own motion." TEX. EST. CODE ANN. § 1054.103(2).  Section 1054.104(b) provides that the visitor's written report must include, among other things, "a description of the ward's . . . living conditions and circumstances" and "a statement that the court visitor has personally visited or observed the ward." TEX. EST. CODE ANN. §1054.104(b)(3), (5).  Section 1054.105(b) provides that "[a] court visitor who has not expressed a willingness to serve without compensation is entitled to reasonable compensation for services provided in an amount set by the court, to be taxed as costs in the proceeding." TEX. EST. CODE ANN. § 1054.105(b).

In this case, the trial court appointed Delk on its own motion.  An appellate court "must uphold a lower court judgment on any legal theory *before it*, even if the court gives an incorrect reason for its judgment." *Victoria Gardens of Frisco v. Walrath*, 257 S.W.3d 284, 290 (Tex. App.—Dallas 2008, pet. denied) (quoting *Guar. Cty. Mut. Ins. Co. v. Reyna*, 709 S.W.2d 647, 648 (Tex. 1986) (emphasis added)).  Because the trial court entered its order on its own motion it had before it all of the provisions authorizing such appointments in the Texas Estates Code.  Consequently, we can also affirm the trial court's ruling based on Sections 1054.103(2) and 1054.105(b) even though the trial court did not cite those sections as authority for its action.

[8]Alford argues that "rescission of the reappointment" prevented Delk from collecting any compensation. Nevertheless, the record is clear that the trial court did not retroactively rescind Delk's appoint, but merely terminated Delk's appointment after the hearing.  Thus, Delk was entitled to compensation for services rendered during the appointment.  Alford also raises complaints of ex parte action and a due process violation resulting from the trial court's sua sponte order.  However, Section 1051.001(a) states that "a person is not required to be cited or otherwise given notice in a guardianship proceeding except in a situation in which [Title III] expressly provides for citation or the giving of notice." TEX. EST. CODE ANN. § 1051.001(a).  Alford's brief fails to demonstrate that notice was required prior to Delk's appointment in what the trial court considered to be an emergency-type situation.

**IV.  There Was No Error in the Omission of Findings of Fact and Conclusions of Law**

Alford argues that the trial court erred in failing to issue findings of fact and conclusions of law.  The record shows that Alford timely requested these findings and timely filed a notice of past due findings.  We have held that "[f]ollowing a proper request and reminder, it is mandatory for a trial court to make and file findings of fact and conclusions of law." *Culver v. Culver*, 360 S.W.3d 526, 538 (Tex. App.—Texarkana 2011, no pet.) (quoting *In re Grossnickle*, 115 S.W.3d 238, 253 (Tex. App.—Texarkana 2003, no pet.)).  "However, a party is not entitled to findings and conclusions in every case." *Interest of S.V.*, No. 05-17-01294-CV, 2019 WL 1529379, at *4 (Tex. App.—Dallas Apr. 9, 2019, no pet.) (mem. op.) (citing *Hous. Auth. of City of El Paso v. Beltran Elec. Contractors, Inc.*, 550 S.W.3d 707, 711 (Tex. App.—El Paso 2018, pet. denied); *Gammon v. Hodes*, No. 03-13-00124-CV, 2015 WL 1882274, at *7 (Tex. App.—Austin Apr. 24, 2015, pet. denied) (mem. op.)).  "[W]hen a trial court makes a discretionary decision—one we review under the abuse-of-discretion standard—the trial [court] can, but is *not required* to issue[] findings of fact and conclusions of law." *Hous. Auth. of City of El Paso v. Beltran Elec. Contractors, Inc.*, 550 S.W.3d 707, 711 (Tex. App.—El Paso 2018, pet. denied) (emphasis in original); *see S.V.*, 2019 WL 1529379, at *5 (citing *Gammon*, 2015 WL 1882274, at *7; *Keever v. Finlan*, 988 S.W.2d 300, 306 (Tex. App.—Dallas 1999, pet. dism'd) (findings of fact and conclusions of law are not required when discretionary attorney fees are involved)).

Alford sought findings of fact and conclusions of law on the trial court's approval of Delk's fees.  Since the award of Delk's fees was discretionary, findings of fact and conclusions of law were not required, and the trial court did not err in failing to issue them. *See S.V.*, 2019 WL

9

1529379, at *5; *Mogged v. Lindamood*, No. 02-18-00126-CV, 2018 WL 6920502, at *11 (Tex. App.—Fort Worth Dec. 31, 2018, pet. abated) (mem. op.).

Moreover, even had there been error, it would not be harmful. "Although 'harm to the complaining party is presumed unless the contrary appears on the face of the record,' a trial court's 'failure to make findings is not harmful error if "the record before the appellate court affirmatively shows that the complaining party suffered no injury."'" *Id.* (quoting *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam) (quoting *Cherne Indus. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989)); *Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 256 (Tex. 1984)). "When the trial court announces its reasons for its ruling in open court, the appellant's ability to present the appeal is not harmed because there was no need to guess the reasons for the trial court's adverse ruling." *Id.*

Here, the trial court announced that it appointed Delk because Climer reported concerns over Edwin's health and safety during a time that Alford, his guardian, was out of the country. These statements provide the basis for Delk's appointment. The trial court also explained that it believed Alford had animosity toward Delk, purposefully violated the court's order by failing to allow Delk to see Edwin, and increased Delk's legal fees by her actions.

In short, we are not forced to guess the trial court's reasoning as to why it appointed Delk or how it determined that fees were reasonable and necessary. As a result, Alford cannot show any harm in the failure to issue findings of fact and conclusions of law. We overrule this point of error. *See id.*

10

**V.     Factually Sufficient Evidence Supports the Trial Court's Finding that Delk's Fees Were Reasonable and Necessary, but Reformation of the Judgment Is Necessary for a Portion of Fees Charged for Work Done by a Paralegal**

The trial court concluded that $3,125.40 was a reasonable and necessary fee for Delk's services.[9]  Alford argues that the evidence is factually insufficient to support those fees.[10]  The determination of the amount of fees that are reasonable and necessary is a question of fact.  *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).  To determine whether attorney fees are reasonable, the trial court must consider the *Arthur Andersen* factors.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).[11]

---

[9]By separate point, Alford argues that the amount of attorney fees presented a fact question because of alleged discrepancies between his invoice and sworn application.  While correct, this argument is not a point of error.  "At a minimum, '[a] complaint on appeal must address specific errors'" committed by the trial court.  *Cammack the Cook, L.L.C. v. Eastburn*, 296 S.W.3d 884, 889 (Tex. App.—Texarkana 2009, pet. denied).  Because Alford's brief does not complain of any act by the trial court, this point of error is overruled.  As a result, we move to Alford's factual sufficiency complaint.

[10]"In our factual sufficiency review, we consider all the evidence, not just the evidence supporting the judgment." *Lee v. Holoubek*, No. 06-15-00041-CV, 2016 WL 2609294, at *4 (Tex. App.—Texarkana May 6, 2016, no pet.) (mem. op.).  "We will reverse the trial court's judgment 'only if the evidence is so weak or if the finding is so contrary to the great weight and preponderance of the evidence that it is clearly wrong and unjust.'"  *Id.* (quoting *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)); *see Keathley v. Baker*, No. 12-11-00151-CV, 2013 WL 1342524, at *5 (Tex. App.—Tyler Apr. 3, 2013, no pet.) (mem. op.).

[11]These factors include
       (1)     the time and labor required, the novelty and difficulty of the question presented, and the skill required to properly perform the legal service;
       (2)     the likelihood that the acceptance of employment precluded other employment by the lawyer;
       (3)     the fee customarily charged in the locality for similar services;
       (4)     the amount involved and the results obtained;
       (5)     the time limitations imposed by the client or by the circumstances;
       (6)     the nature and length of the professional relationship with the client;
       (7)     the experience, reputation, and ability of the lawyer performing the services; and
       (8)     whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.
*Arthur Andersen & Co.*, 945 S.W.2d at 818 (citing TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A (Tex. State Bar R., art. X, § 9)).

Alford's brief does not address these factors or otherwise argue that there was insufficient proof of these factors. Instead, she argues that Delk did no work for Edwin's benefit within the scope of the order. We disagree.

The trial court's order required Delk to "prepare a report on the current status of the Ward and make any appropriate recommendations to the [trial] [c]ourt." To prepare, Delk's affidavit showed that he "requested a copy of the file with the Court to review the reports of the Ward since the last hearing" he attended, spoke to Climer when she called his office several times, responded to "unnecessary and vexatious" discovery propounded by Alford, and unsuccessfully attempted to get access to Edwin. Delk's affidavit stated,

> Had the guardian allowed me access this would have been a very simple matter with very little time expended. She substituted her judgement for the Order of the Court, denied me the ability to complete my mandate from the Court, and prolonged this matter unnecessarily by serving discovery (much of the discovery was for documentation she could have obtained by searching public resources rather than demanding its production from me. [sic]).

Delk's itemized billing described every action he billed for in detail and set out the amount of time spent on each item and the costs incurred for every action in accordance with his charged rate. Delk's affidavit described his expertise and stated his normal rate was $300.00 per hour, which he reduced to $250.00 per hour for this case. The billing showed that Delk spent 12.10 hours on the case and provided a total for the services he worked. Due to the unique circumstances in the case, including the trial court's finding that Alford violated its order and increased expenses by her actions, we find that factually sufficient evidence supports the trial court's award of Delk's fees and expenses.

12

Yet, Delk also stated that his paralegal of ten years assisted in the case to "lessen the financial burden" and billed at the rate of $85.00 per hour. The itemized billing showed the paralegal spent 1.3 hours on the case. We have previously stated that "[a]n award of attorney fees may include a legal assistant's time to the extent that the work performed 'has traditionally been done by any attorney.'"[12] *All Seasons Window & Door Mfg., Inc. v. Red Dot Corp.*, 181 S.W.3d 490, 503 (Tex. App.—Texarkana 2005, no pet.) (quoting *Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.—Fort Worth 1997, writ denied)). Here, Delk's itemized billing showed that while his paralegal's work in revising and preparing discovery responses constituted work traditionally done by an attorney, answering and placing telephone calls and uploading documents did not. Therefore, we find that the charge of $68.00 for 0.8 hours spent by Delk's paralegal performing support services was not recoverable as a fee.

The bill for professional services totaled $3,119.00, and the invoice showed that $6.40 was spent in copying expenses, for a total of $3,125.40. We modify the trial court's judgment by deleting $68.00 from the attorney fee award, leaving an award in the amount of $3,057.40.[13]

---

[12]To recover fees for work performed by paralegals,
> "the evidence must establish: (1) the qualifications of the legal assistant to perform substantive legal work; (2) that the legal assistant performed substantive legal work under the direction and supervision of an attorney; (3) the nature of the legal work performed; (4) the legal assistant's hourly rate; and (5) the number of hours expended by the legal assistant."

*Id*. (quoting *Multi–Moto Corp. v. ITT Commercial Fin. Corp.*, 806 S.W.2d 560, 570 (Tex. App.—Dallas 1990, writ denied)).

[13]In his response, Delk moved for sanctions under Rule 52.11 of the Texas Rules of Appellate Procedure. Delk argued that Alford's appeal is groundless, grossly misstates the evidence, and omits critical facts. While we agree that Alford's factual recitations in the body of her brief are colored improperly, we decline to assess sanctions against Alford in light of our reduction of the attorney fees.

## VI.  Conclusion

We modify the trial court's judgment to reflect an attorney fee award of $3,057.40 and affirm the trial court's judgment, as modified.

Ralph K. Burgess
Justice

Date Submitted:     December 27, 2019
Date Decided:       January 29, 2020

14